UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | | |
|---|---|---|
| In re: | ) | Bankr. Case No. 10-41613-JDP |
| | ) | |
| HOLLIFIELD RANCHES, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____) | | |
| | ) | |
| TYSON FRESH MEATS, INC., a | ) | Adv. Case No. 12-08030-JDP |
| Delaware corporation, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | District Case No. 1:13-cv-00506-EJL |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM DECISION |
| HOLLIFIELD RANCHES, INC., an | ) | AND ORDER |
| Idaho limited liability company, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| _____ ) | | |

Pending before the Court in the above-entitled matter is Hollifield Ranches, Inc. (Hollifield) appeal of the Memorandum of Decision and Judgment of the Bankruptcy Court in Case No. 12-10030-JDP, Adversary Case No. 12-08030. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Memorandum Decision and Order - 1

**BACKGROUND**

Jurisdiction for this appeal is pursuant to 28 U.S.C. § 158. This case involves a contractual dispute between Hollifield and Tyson Fresh Meats, Inc. (Tyson). Tyson brought an adversary action for breach of contract on the part of Hollifield for failure to pay damages associated with risk management losses incurred under the Tyson Fresh Meats Cattle Feeding Agreement with Double H Cattle Co. (Agreement). Hollifield counterclaimed that Tyson breached the contract by not following "reasonable and customary" hedging practices for the cattle placed for feeding under the Agreement. The Bankruptcy Court held a trial on the matter and determined the Agreement was not ambiguous and Hollifield had breached the Agreement and Tyson was owed damages in the amount of $958,442.43.

It is undisputed the parties entered a contract memorialized in the Agreement. The sole portion of the Agreement challenged on appeal is the Risk Management section of the Agreement which states:

> TFM [Tyson] will be responsible for management of market risks through the reasonable and customary use of hedging practices on the cattle placed for feeding under this agreement, except in the event Double H [Hollifield] requests different hedging practices at which time the parties shall mutually agree as to what hedging practices to undertake hereunder. The gain/loss resulting from the hedging activity will be included in settlement between Double H Cattle Co. and TFM for each lot of cattle. In the event cattle are delivered from multiple lots in any given week, the hedge revenue or cost will be allocated to each lot on a dollars per head basis.

Specifically, it is the first sentence of this Risk Management section which is disputed as Hollifield does not contest the gain/loss calculations for each lot of cattle as compiled by

Tyson. Hollifield argues the sentence is ambiguous and should therefore be construed against the drafter which was Tyson. Tyson maintains the contract is not ambiguous and the Court should apply the contract using the plain meaning of the words.

## ANALYSIS

The parties agree the Agreement is governed by Idaho law. Whether or not a contract is ambiguous is a question of law. *Melichar v. State Farm Fire and Casualty Co.*, 152 P.3d 587, 591 (Idaho 2007). "A contract must be interpreted according to the plain meaning of the words used if the language is clear and unambiguous." *Hill v. Am. Family Mut. Ins. Co.*, 249 P.3d 812, 815 (Idaho 2011). When the contract is clear and unambiguous, the meaning of it and the intent of the parties must be ascertained from the plain meaning of the words used in the contract. *Albee v. Judy*, 31 P.3d 248, 252 (Idaho 2011). "If, however, the contract is determined to be ambiguous, 'the interpretation of the document is a question of fact which focuses on the intent of the parties.'" *Id. citing Ada County Assessor v. Taylor*, 861 P.2d 1215, 1218 (Idaho 1993). Stated another way, the Court does not consider extrinsic evidence of the intent and understanding of the contract by the parties unless the language of the contract is deemed as a matter of law to be ambiguous. "Interpreting an unambiguous contract and determining whether there has been a violation of that contract is an issue of law subject to free review." *Potlatch Educ. Ass'n v. Potlatch School Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010).

In this case, the Court agrees with the Bankruptcy Court that the Risk Management section of the Agreement is unambiguous as a matter of law. "In the absence of

ambiguity, the document must be construed in its plain, ordinary and proper sense according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 25 P.3d 76, 78 (Idaho 2001). Further, the Court finds the disputed sentence in the contract is not reasonably subject to conflicting interpretations. Hollifield agreed to delegate the risk management of the volatile cattle market to Tyson, but Hollifield retained the right to request different risk management practices to be employed if they could be mutually agreed to by Tyson and Hollifield. Tyson had a duty to manage the market risk via "reasonable and customary use of hedging practices."

The Court finds the plain meaning of the terms "reasonable" and "customary" are easily determined and do not make the language used in the Agreement ambiguous. The term "reasonable" is not ambiguous. "Reasonable" means "fair, proper, or moderate under the circumstances." Black's Law Dictionary 1379 (9th ed. 2009). "Customary" means "[g]eneral rules and practices that have become the norm through unvarying habit and common use." Black's Law Dictionary 442 (9th ed. 2009). In this case, the common practice within the cattle industry is the relevant standard for "customary."

The testimony from both sides established there a number of hedging practices that are used within the cattle industry: short and long hedging, purchasing call options and purchasing put options to name a few. Here Tyson's policy was to *only* use short hedges to manage sale price risk based on the breakeven calculations provided by Hollifield. The Bankruptcy Court determined the credibility of the witnesses on the disputed fact of whether Mr. Hollifield was advised of the Tyson hedging policy prior to entering the

Memorandum Decision and Order - 4

Agreement and determined Mr. Hollifield had been advised prior to entering the Agreement that it was Tyson's policy to only use short hedges to manage market risk.

Mr. Hollifield testified as to risk management practices he used regarding his cattle business prior to entering into the contract with Tyson. However, Mr. Hollifield was not determined to be an expert in the risk management practices used in the cattle industry. Dr. Mintert was qualified as in expert in the risk management practices used in the cattle industry and agreed there were several hedging practices used in the industry. Dr. Mintert testified the use of only short hedges was a conservative approach but was a "reasonable and customary" hedging practice used in the cattle industry. This expert opinion was not rebutted by any other expert opinion.

The Court finds the contract did not require multiple or specific hedging practices to be used by Tyson, only that the hedging practices used were reasonable and customary for the cattle industry. The testimony in the record supports the Bankruptcy Court's finding that Tyson's hedging practice of only using short hedges satisfied the this standard.

Additionally, there was no evidence that Hollifield ever (and especially after the selling prices of cattle started increasing dramatically) requested a different risk management hedging practice be used by Tyson as provided for under the contract. No request was made even though Hollifield was receiving gain/loss statements on each lot of cattle and could see the market losses were increasing under the current risk management hedging practices being employed by Tyson.

Memorandum Decision and Order - 5

Additionally, the Court does not find Hollifield's interpretation of the contract to be reasonable when Mr. Hollifield testified he believed Tyson controlled the hedging tools that could be used unless Hollifield asked for a "non-customary" risk management practices to be used under the contract. No where in the contract does it limit Hollifield's right to request a different type of heading practice to only non-customary hedging practices (such as a "Texas Hedge"). The only limit to a different hedging practice request is that both parties had to mutually agree to the different hedging practice. There is no evidence in the record that if a request had been made, Tyson would not have agreed to using another hedging practice such as put options to manage market risk. Mr. Hollifield has a law degree and is a sophisticated business person who knows how to request language be added to a contract in contract negotiations if that was truly his understanding. Moreover, it would not make sense for Tyson to agree to a "non-customary" risk management practices under the contract as that would not normally be in the best interest of the other party to use hedging practices out of the norm for the industry and thereby increase the overall risk to the other party.

Under the contract, Hollifield agreed to let Tyson manage the market risk on the cattle. Mr. Hollifield testified he wanted Tyson to have the responsibility for risk management so he could focus on the day-to-day cattle feeding operations. Dr. Mintert, the cattle industry expert, testified Tyson used a conservative hedging approach. "Conservative" does not mean such an approach was unreasonable or uncustomary. Rather under the contract, Hollifield was free at any time during the contract to request

other reasonable and customary risk management hedging practices (such as put options) to be used. Hollifield did not make such a request and it is an unreasonable interpretation of the unambiguous language that Tyson had to use hedging practices other than the hedging practice it was using and made known to Mr. Hollifield unless requested by Hollifield.

By its very nature, hedging acknowledges the risk of forecasting the market. Hollifield reserved the right to request a different hedging practice, but did not exercise that right. It is too late now with 20-20 hindsight, versus at the time, to request other hedging tools should have been used by Tyson. Hindsight is not the basis for determining what is "reasonable and customary." Reliance on a reasonable and customary hedging practice does not mandate a profit from the hedging technique used.

For these reasons, the Court finds under contract law in Idaho the Agreement was not ambiguous and the risk management hedging practices used by Tyson were within the "reasonable and customary use of heading practices" used by the cattle industry. Therefore, the breach of the contract was by Hollifield, not by Tyson and the Judgment of the Bankruptcy Court must be affirmed.

## ORDER

**IT IS ORDERED:**

1. The Memorandum Decision and Judgment of the Bankruptcy Court are **AFFIRMED.**

2. The Court will entertain a motion by Tyson for attorneys fees and costs on the appeal pursuant to Idaho Code § 12-120(3) and applicable local rules.

DATED: **September 24, 2014**

Honorable Edward J. Lodge
U. S. District Judge